606 So.2d 990 (1992)
Gilbert GIRARD and Norma Girard, Plaintiffs-Appellants,
v.
Bobby PRICE d/b/a Bobby's Lounge, City of Broussard, La., a Municipal Corporation with the Honorable Leroy Miguez, Mayor, as its Agent for Service of Process, Defendants-Appellees.
No. 91-614.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
*991 Marshall J. Stockstill, Lafayette, for plaintiffs/appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John F. Wilkes, III, Lafayette, for defendant/appellee City of Broussard.
John V. Ghio, Lafayette, for defendant/appelleePrice.
Before DOUCET and YELVERTON, JJ., and CULPEPPER[*], J. Pro Tem.
DOUCET, Judge.
The plaintiffs, Norma Girard and Gilbert Girard, appeal a trial court judgment on a personal injury matter.
On November 21, 1987, at about 7 p.m., the plaintiff, Norma Girard, and a friend, Debbie, went to Bobby's Lounge in Broussard, La. They had already had about two beers during the day. They parked in the lot at the side of the building. They walked around the building onto the sidewalk which ran in front of Bobby's Lounge. As she approached the entrance of the bar, Mrs. Girard tripped on a landscape timber which had been placed across the sidewalk by Bobby Price, the owner of Bobby's Lounge. Mrs. Girard fell hard onto the concrete. When she got up she was bleeding from the nose and mouth. She refused to seek medical assistance at that point. She went into the bar where the barmaid gave her a wet cloth to clean her face. She *992 stayed at the bar for about two and a half hours, drinking six or seven beers by her own account. At that point, she either attempted to get to her feet and her legs gave way, or fell off of her bar stool. An ambulance and the police were called. Mrs. Girard refused to accept medical assistance from the paramedics.
The barmaid asked Mrs. Girard and her friend to leave the bar. A passerby called Mrs. Girard's niece because neither Mrs. Girard nor her friend felt capable of driving. On November 24, 1987, three days later, Mrs. Girard went to her doctor, John C. Dugal, complaining of pain in her lips, chest, left wrist, shoulders, knees, back, and neck. X-rays revealed a nasal fracture.
On February 4, 1988, Dr. Robert Tarpy performed an open reduction of the nasal fracture with septoplasty, corrected a deviated septum, and rebroke and straightened Mrs. Girard's nose. On April 13, 1988, he was satisfied that her nose had healed and discharged her.
Throughout this period, Mrs. Girard continued to see Dr. Dugal. He treated her with cortisone shots, pain killers, muscle relaxants, and anti-inflammatory medications. He also advised weight loss and prescribed diet pills. She was still seeing him at the time of trial with essentially unchanging complaints of pain.
Mrs. Girard was also treated by her dentist, Dr. James Bush. Dr. Bush diagnosed temporomandibular joint syndrome and prescribed pain killers and a TENS unit. He, too, continued to treat Mrs. Girard at the time of trial.
As a result of the accident, Mrs. Girard and her husband filed suit against Bobby Price d/b/a Bobby's Lounge, and the City of Broussard (the City), alleging both negligence and strict liability. Price filed a third party demand against the City.
After a trial on the merits the trial judge dismissed both the Girards' and Price's demands against the City. Judgment was rendered in favor of Norma Girard against Price in the amount of $35,000 reduced by a finding of 70% comparative fault allocated to Mrs. Girard. Gilbert Girard's claims for loss of consortium were denied. One-half of the costs were apportioned to Mrs. Girard. Plaintiffs appeal the trial court's failure to find the City liable, the finding of comparative negligence and apportionment of fault, the quantum of damages awarded, the denial of Gilbert Girard's loss of consortium claim, and the apportionment of costs to Mrs. Girard.

LIABILITY OF CITY
La.R.S. 9:2800 limits the liability of public bodies as follows:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
In Fontenot v. Soileau, 567 So.2d 815, 817 (La.App. 3rd Cir.), writ denied, 571 So.2d 656 (La.1990), this court stated that:
[O]ne is presumed to have constructive knowledge of a defect or dangerous condition when it is shown it existed for *993 such a long time that knowledge thereof can be presumed, or that it can be said one should have had knowledge of the condition. In the instant case four years passed without trimming the trees. The city had constructive knowledge and we affirm the trial court's findings of liability of Ville Platte.
(citation omitted.)
There is conflicting testimony as to the length of time the timber had been in place at the time of the accident.
Bobby Price testified that it had been there for over a year before the accident. However, Harold Romero, Chief of Police for the City, stated that he was called to Bobby's Lounge two or three times during 1987, once only 30 or 40 days before the accident, and did not remember seeing the timber. Neither did the policeman who was called to the scene after the second fall recall seeing the timber. Additionally, Leon Miguez, Mayor of Broussard at the time of the accident, testified that he passed Bobby's Lounge once or twice a month in the course of his duties as Mayor, and daily as a school bus driver, and had never seen the timber.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
* * * * * *
Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
* * * * * *
But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
(citations omitted.)
Rosell v. ESCO, 549 So.2d 840 (La.1989), on remand, 558 So.2d 1360 (La.App. 4th Cir.1990), writ denied, 561 So.2d 105 (La. 1990). We find no manifest error in the credibility evaluation made by the trial court. Accordingly, we may not set aside the trial court's factual finding with respect to the City's knowledge of the timber. Therefore, the trial court correctly dismissed the plaintiffs' claims against the City.

PLAINTIFF FAULT
The plaintiffs contend that it was error for the trial court to find Mrs. Girard comparatively at fault in the accident and in assessing 70% of the fault to her. A trial court finding as to comparative fault is subject to the manifest error rule. Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3rd Cir.1984), affirmed in part, reversed in part on other grounds, 466 So.2d 1280 (La.1985).
The trial court stated its reasons for ruling on this matter as follows:
While the timber did create some hazard to pedestrian traffic, the area was lighted and the timber easily seen and able to be stepped over. In fact, on the evening in question, plaintiff's witness, Wayne Burke, did just that. Further, plaintiff's friend, Debbie, apparently did not trip on the timber. No evidence was presented to the Court that anyone else ever tripped on or complained about the timber.
The law in Louisiana is clear that pedestrians on public sidewalks have a duty to exercise reasonable care. Such pedestrian has a duty to see that which should have been seen and to observe the walkway to see if the path is clear. Callender v. City of New Orleans, 524 So.2d 136; Korver v. City of Baton Rouge, 348 So.2d 708.
*994 The timber in question was not so small as to constitute a hidden defect or trap. On the contrary, it was large and easy to see. Plaintiff's duty to observe her pathway surely included the duty to see so large an obstruction.
The fact that the fall occurred at night places an even greater burden on plaintiff. A pedestrian must be even more cautious at night than in the daytime. Williams v. Orleans Parish School Board, 541 So.2d 228.
After reviewing the record, we cannot say that the trial court erred in finding that Mrs. Girard's own negligence contributed to her injury.
With regard to the appropriate apportionment of fault in cases where contributory negligence has been found, this court stated in Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672, 675-676 (La. App. 3rd Cir.1991) that:
La.C.C. 2323 provides that:
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
* * * * * *
Our Supreme Court, in the case of Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, at 974 (La.1985), gave us guidelines to assist in the determination of percentages of fault.
"in assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including, (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Apportionment of fault is a factual matter. The trial court's findings in this regard should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Baugh v. Redmond, 565 So.2d 953 (La.App. 2nd Cir.1990); Central La. Electric Company v. Cox Construction Co., Inc., 471 So.2d 1117 (La.App. 3rd Cir.1985).
The trial court found Mrs. Girard to be 70% at fault and Bobby Price d/b/a Bobby's Lounge to be 30% at fault.
However, considering the facts in light of the Watson guidelines, we find that the major part of the fault lies with Bobby Price for creating the hazardous condition. Accordingly, we believe that fault should properly be apportioned 60% to Bobby Price d/b/a Bobby's Lounge, and 40% to Mrs. Girard.

QUANTUM OF DAMAGES
Plaintiffs next argue that the trial court's award of damages was inadequate:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. art. 1934(3), we stated (after exhaustive review of the facts, and reversing the appellate court for disturbing (on the basis of prior awards) the trier of fact's award) in Lomenick v. Schoeffler, 250 *995 La. 959, 200 So.2d 127, 132 (1967) (Italics ours):
The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court.... The facts and circumstances in the other neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of this award.
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much 3 discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is
(footnote omitted.)
only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Wilson, 341 So.2d 332 (La.1976)] for purposes of then determining what would be an appropriate award for the present case."
Reck v. Stevens, 373 So.2d 498, 501 (La. 1979).
After carefully reviewing the record, we cannot say that the trial court's damage award reveals a clear abuse of the trial court's discretion. Accordingly, we may not disturb the award.

LOSS OF CONSORTIUM
The plaintiffs next complain of the trial court's denial of Mr. Girard's claim for loss of consortium.
The compensable elements of damage in a loss of consortium claim are loss of society, sex, and service and support. See LSA-C.C. 2315(B). See also Gaspard v. Transworld Drilling Co., 468 So.2d 692 (La.App. 3rd Cir.1985) and Sharp v. Metropolitan Property and Liability Ins. Co., 478 So.2d 724 (La.App. 3rd Cir.1985). "Society" is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. "Support" is the lost family income that would go to support the uninjured spouse. "Service" is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained from another source and at a price. See Gaspard, supra.
Whether a party is entitled to damages or not is an issue of fact to be decided by the trier of fact. A finding of fact cannot be overturned on appeal absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3rd Cir.1986).
In the case currently before the court, Mr. and Mrs. Girard gave the only testimony in regard to the loss of consortium claim. Neither testified that they had lost any love, affection or companionship because of the accident. Mr. Girard did not mention any change in Mrs. Girard's attitude toward him. Mr. Girard testified that they had not had a sexual relationship since the accident. However, in her frequent visits to the doctor, Mrs. Girard never complained of any problem with her sexual relationship with her husband. As this court stated in Lonthier, supra, at 776:
The very nature of this item of damages renders it insusceptible of objective proof. Basically, proof of absence of sexual relations comes down to the credibility of the couple in the eyes of the jury. The trier of fact is in a much *996 better position to determine the credibility of witnesses and the evidence they present, and absent some manifest error, the reviewing court must follow the trial court's determination. Moore v. Moore, 479 So.2d 1040 (La.App. 3rd Cir.1985).
The judge in this case, like the jury in Lonthier, must not have believed the Girards' testimony as to their lack of a sexual relationship. After reviewing the record, we cannot say that the trial court's credibility evaluation was contradicted by the evidence, and, therefore, clearly erroneous. Finally, there was no testimony that the Girards had to hire extra help for house or yard work or that Mrs. Girard's injury incurred any hardship on her husband.
Accordingly, the trial court's dismissal of the consortium claim was not in error.

COSTS
Finally, plaintiffs argue that the trial court erred in assessing one-half of the court costs to Mrs. Girard. La.C.C.P. art. 1920 provides in pertinent part that:
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Considering the apportionment of fault in this matter and the failure of the claim for consortium, we find no error in the trial court's assessment of costs.

CONCLUSION
We find no error in the trial court's determination of liability or award of damages. The judgment is amended to reflect that fault for the accident is apportioned 60% to Bobby Price d/b/a Bobby's Lounge, and 40% to Norma Girard.
Accordingly, the judgment of the trial court is affirmed as amended.
AFFIRMED AS AMENDED.
NOTES
[*] Honorable William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.