635 So.2d 667 (1994)
Charlene BREAUX, et al., Plaintiffs-Appellants,
v.
WAL-MART STORES, INC., Defendant-Appellee.
No. 93-1035.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*668 Lee Andrew Gallaspy, Kermit A. Doucet, Michael G. Daiy, and Jeffery F. Speer, Lafayette, for Charlene Breaux, et al.
Philip Andre Fontenot, Lafayette, for Wal-Mart Stores, Inc.
Before KNOLL, COOKS and WOODARD, JJ.
COOKS, Judge.
Charlene Breaux, John Breaux, and their minor daughter Halynn appeal the sufficiency of a jury award and a finding that Charlene Breaux was thirty (30%) percent at fault in causing a slip and fall accident which occurred at a Wal-Mart store in the city of Lafayette. For the reasons set forth below, we amend the judgment and affirm.

FACTS
Charlene Breaux, joined by her husband and their two children, visited the local Wal-Mart store to exchange a fishing rod purchased earlier. On arrival, one of the children expressed a desire to use the restroom. In response, Charlene proceeded to the store's restroom accompanied by the children. Once in the restroom, Charlene proceeded to the first two stalls which she discovered were too filthy for use. She then entered the third stall. While using the toilet, she observed water leaking from it and *669 the floor was wet. After leaving the stall, Charlene explained, she decided to pick-up Halynn who was only fifteen months old and still wearing diapers. As she proceeded back toward the third stall to warn Heather of the danger, Charlene slipped and fell on the floor striking her head against the stall and landing on her buttocks.
Charlene immediately informed Wal-Mart personnel of the accident. She located her husband; and they exchanged the fishing rod before leaving the store. That same night, Charlene and Halynn visited the emergency room at Hamilton Medical Center for examination. Halynn's medical findings were unremarkable. However, Charlene suffered back discomfort and a temporomandibular joint (TMJ) injury which required splint therapy to stabilize her jaw. As a result of these injuries, Charlene alleges she was not able to return to her part-time job.
Charlene Breaux and John Breaux, individually and on behalf of Halynn Breaux, filed suit against Wal-Mart seeking damages for medical expenses, pain and suffering, mental anguish and inconvenience, loss of earnings and loss of consortium. A jury trial was held. At trial Charlene testified she slipped and fell solely because of water on the restroom floor. Wal-Mart sought to exculpate itself from full liability by asserting Charlene had knowledge of the floor dampness prior to her fall; and she did not take reasonable steps to avoid the fall. Wal-Mart also alleged the third stall had been taped shut and the water valve on the toilet turned off shortly before the accident; but, an unidentified person or perhaps Charlene "busted" the tape and tampered with the water valve.
After trial, the jury found Wal-Mart seventy (70%) percent at fault and Charlene Breaux thirty (30%) percent at fault in causing the accident. Charlene was awarded damages in the amount of $3,000.00 for past and future medical expenses, $1,500.00 for physical pain and suffering, $1,000.00 for mental pain and suffering, and $350.00 in lost wages. No loss of consortium was awarded to either John or Halynn Breaux; and $97.00 was awarded for Halynn Breaux's medical expenses. Subsequent to trial, the Breauxs filed a Motion for Additur and/or New Trial which was denied by the trial court. They appealed the judgment, assigning as error the following: (1) The jury abused its discretion in finding Charlene Breaux thirty (30%) percent at fault; (2) the jury abused its discretion in awarding inadequate damages to them; and (3) the trial court erred in refusing to grant the Motion for Additur and/or Motion for New Trial.

CHARLENE BREAUX'S FAULT
We must determine, first, whether the jury erred in finding Charlene Breaux partially at fault in causing her own injuries. The trier of fact is required to consider the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed. Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La. 1985). The supreme court, in Watson, at 974, further explained:
"In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Unquestionably, the moisture on the floor created an unreasonable risk which served as the major factor in causing Charlene's fall. Wal-Mart does not assign as error the jury's finding casting it principally at fault in causing the accident. See LSA-R.S. 9:2800.6. Next, the triers of fact were required to determine "what reasonable precautions" might have been exercised by Charlene to guard against the particular risk posed by the floor's condition in assessing *670 her relative fault, if any, in causing the injury she ultimately sustained. The fact that Charlene Breaux noticed moisture on the floor after entering the restroom legally does not compel a finding that she was negligent or acted in an unreasonable manner in exiting the restroom. Neither the jurisprudence nor legislative adoption of comparative fault in assessing liability in such cases automatically require fact finders to assign fault whenever a version of the facts might suggest a plaintiff failed to take "every possible step" to guard against the risk of falling after noticing a wet floor surface. However, a patron must exercise reasonable care for his own safety when facing obvious hazards. Initially Wal-Mart argues, after noticing the wet floor, Charlene did not exercise reasonable care or precaution to avoid the obvious danger of slipping and falling on the damp floor surface. Her failure to exercise greater care was not excusable, according to Wal-Mart, because she was not in an area where her attention might have been diverted by items displayed on a store shelf. See Stockwell v. Great Atlantic, 583 So.2d 1186 (La. 1st Cir.1991). To the contrary, it contends, she was fully cognizant of the danger; yet she elected "to pick up Halynn, [place] her on her hip, and [turn] around again in the dampness... [heading] back towards the third stall to see about her other daughter, Heather." Apparently, Wal-Mart convinced the jury (as it argued in brief) that Charlene should have "held her daughter's hand in the bathroom and walked back with her to the third stall instead of picking her up to walk in water."
Wal-Mart also called a store employee to testify at trial that approximately thirty minutes before the accident, the water valve on the third stall's toilet was turned off and a sign was taped on the stall's door which read "out of order." Wal-Mart stated when the toilet was inspected immediately after Charlene's fall the tape was "busted through," the sign was hanging on the door, and the water valve was turned on. Wal-Mart did not photograph the door or floor area in the condition first discovered, as it alleged, but waited until the door was retaped, the sign rehung, and the floor cleaned before photographing the scene of the fall. Suffice it to say, Wal-Mart's failure to film the original scene or to record its observations in an accident report (customarily prepared shortly after such incidents) substantially diminishes the persuasive weight of its employee's testimony. Charlene testified she did not observe any tape or sign on the door. By speculation only, Wal-Mart suggested either Charlene or a phantom third party "busted through" the tape and caused the sign to hang down on the door. With interest, we note Wal-Mart's speculative version ends without any mention of what mysterious person or force might have turned on the toilet's water valve.
Wal-Mart reminds us the standard of appellate review articulated in Rosell v. ESCO d/b/a Jolly Elevator Corp., 549 So.2d 840 (La.1989) and, again more recently, in Stobart v. State of Louisiana, DOTD, 617 So.2d 880 (La.1993) prevents this court from reversing the jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," even if we would weigh the evidence differently. See also Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La. 1990). Wal-Mart urges where two permissible views of the evidence exists, the fact finders' choice between them is not manifestly erroneous or clearly wrong. Rosell v. ESCO d/b/a Jolly Elevator Corp., supra. It suggests the jury could have concluded (1) "that the sign was up and the door was taped shut and Mrs. Breaux disregarded the sign and pushed open the bathroom door to the third stall," (2) "that another customer ... disregarded the sign and pushed in the door to the third stall breaking the tape and causing the sign to fall;" or (3) "that Mrs. Breaux observed the broken tape and the hanging sign ... and went into the third stall anyway." Even if we accept as a permissible construction of the evidence, one of the three views pontificated by Wal-Mart, the conduct alleged did not serve as a cause-in-fact of the injuries ultimately sustained by Charlene Breaux. She did not fall in the third stall or while she was exiting it. Even if the jurors believed Charlene should have noticed the sign and taped door, the crucial question is who turned on the water valve in the third stall? The answer to this question cannot be gathered from any reasonable construction of *671 the evidence. The jury reasonably could not conclude she turned on the toilet's water valve from the evidence presented by Wal-Mart. Charlene slipped and fell outside of the third stall in the restroom's "walking area" where moisture also had accumulated as a result of the leaking water pipe or human waste spilled from the adjacent stalls which Wal-Mart's employees, by admission, had not cleaned for at least thirty minutes. Although Wal-Mart alleged Charlene was negligent in entering the third stall, her decision to do so did not cause her to fall. She safely exited this stall; and she was proceeding to assist her small children after discovering the area outside the stalls was wet and presented a hazard to them as well. Charlene's fault, if any, must rest on her decision to pick-up Halynn, only 15 months old, and to warn Heather of the danger by turning in her direction to caution and assist her in safely exiting the restroom.
When an appellate court finds a jury's assessment of fault too high, it should be reduced to the highest percentage which it would have affirmed as reasonable within the jury's discretion. Bergeron v. Wal-Mart Stores, Inc., 617 So.2d 179, 181 (La.App. 3rd Cir.), writ denied, 619 So.2d 1065 (La.1993); Carpenter v. Hartford Fire Ins. Co., 537 So.2d 1283, 1288 (La.App. 2nd Cir.1989). After carefully examining the record as a whole, we find the jury was clearly wrong in assessing Charlene with 30% fault in causing the accident. Though aware of the danger, Charlene's decision to pick up Halynn was motivated by a desire to protect the child from falling. Motivated by the same desire, she turned to warn the second child and slipped on the wet floor. Charlene's haste to protect her small children was not clearly unreasonable under the circumstances. On the other hand, Wal-Mart's decision to simply tape and place a sign, which might be removed easily, did not satisfy Wal-Mart's duty to take reasonable steps to protect its customers from a known danger. Our jurisprudence confirms "a merchant's duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances that might cause a customer to fall." Braud v. Great Atlantic & Pacific Tea Company, 618 So.2d 1069 (La. App. 1st Cir.1993); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Ritchie v. S.S. Kresge Company, Inc., 505 So.2d 831 (La.App. 2nd Cir.), writ denied 507 So.2d 227 (La.1987). Exactly what protective measures should be taken by a merchant depends on the circumstances of each case which includes consideration of the particular risk involved, the volume of business, the time of day, the section of the store, the floor space utilized for customer service, and other factors. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.App. 2d Cir.1984); Gonzales v. Winn-Dixie Louisiana, Inc. supra: Hall v. Petro of Texas, Inc., 580 So.2d 420, 422 (La.App. 2d Cir.1991). Wal-Mart did not forbid entry into the restroom; nor did it assign an employee to warn patrons not to use the toilet in the third stall; or, even more importantly, to prevent a person from turning on the valve to the leaking pipe. Instead, Wal-Mart's employees did not return to inspect the restroom until notified of Charlene's fall, at least thirty minutes after discovery of the danger. The other stalls in the restroom were filthy and obviously unkept. Restrooms are usually small in space; and, often, customers allow paper to clog commodes and water to spill on the floor. These occurrences joined with the potential that an employee or patron might unwittingly turn on the water supply to the leaking toilet were not unforeseeable. In assessing liability, Wal-Mart's failure to act reasonably must be balanced against Charlene's conduct when faced with a sudden danger which posed a risk not only to her; but to her small children, who may have sustained even greater injuries if they had fallen. We conclude the highest percentage of fault the jurors reasonably could have assigned to Charlene's action is ten (10%) percent for not bracing herself better or firmly securing each step before proceeding on the wet surface.

QUANTUM
The principles controlling our review of quantum award are well settled. We noted in Chatelain v. United States Fidelity and Guaranty Company, 495 So.2d 379, 381 (La. *672 App. 3rd Cir.), writ denied, 498 So.2d 756 (La.1986):
"... Before the appellate court can disturb a quantum award made by the trier of fact, the record must clearly reveal that the trier of fact abused its great discretion in making the award. The question to be answered on the appellate level is whether the trier of fact's award can be reasonably supported by the record, not whether a different award may have been more appropriate. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Browning v. Commercial Union Ins. Co., 476 So.2d 559 (La.App. 3rd Cir.1985); Sikes v. McLean Trucking Co., 383 So.2d 111 (La. App. 3rd Cir.1980).
In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must look at the individual circumstances of the case before it. Only after a close analysis of the facts reveals a clear abuse of discretion of the trier of fact may the award of damages be altered. Reck v. Stevens, 373 So.2d 498 (La.1979); Hefner v. B.J. McAdmas, Inc., 487 So.2d 505 (La.App. 3rd Cir. 1986)."
Examination of the record convinces us that the jury abused its discretion in the particulars discussed below.

1. General Damages

The jury only awarded Charlene $2500.00 in general damages. This award included $1,500.00 for past and future physical pain and suffering and $1,000.00 for past and future mental pain and suffering. Charlene suffered neck and back injuries which were treated by a physician for approximately two months. While her neck and back injuries were minor, she sustained a displaced temporomandibular joint, which caused her recurring headaches requiring splint therapy and installation of braces eventually. Charlene testified she suffered recurring headaches from the date of the injury, May 31, 1991, until September, 1991. During this period, a splint was placed in her mouth. Charlene also stated she could not engage in normal family activities such as boat riding and playing with her children; and her general demeanor was much more irritable because of her constant pain and suffering. The medical testimony corroborated Charlene's complaints of pain. We must examine the jurisprudence to determine an appropriate award in this case. Coco, supra; Stoutes v. GMAC, 598 So.2d 654 (La. App. 3rd Cir.1992); Kimble v. Wal-Mart, 539 So.2d 1212 (La.1989); Friedrichs v. State Farm Fire & Cas., 496 So.2d 496 (La.App. 1st Cir.1986); Bock v. Burnham, 419 So.2d 6 (La.App. 4th Cir.1982).
Charlene notes in Stoutes, supra., a case involving TMJ disfunction, this court raised a general damage award from $2,500.00 to $17,500.00. She contends her injuries support a greater damage award than in Stoutes; and, she asks this court to render an award for general damages ranging between $30,000.00 and $50,000.00. Although there are factual similarities between Stoutes and the present case, the duration and extent of treatment were different. Plaintiff in Stoutes underwent splint therapy for approximately one year. Charlene's condition improved six to eight weeks after treatment; and Dr. Weatherspoon recommended ending Charlene's splint therapy and installing braces two months after first examining her. Significantly, in Stoutes, the plaintiff was forced to seek psychological counseling for severe emotional depression resulting from recurrent pain caused by the accident. Though we agree the jury's general damage award was too low, the figures suggested by Charlene are excessively high. Our yardstick for measuring damages only extend to the lowest award a jury reasonably could have rendered considering the particular medical and other relevant facts presented. We believe an award of $7,500.00 is adequate and the lowest reasonable award recognized in the jurisprudence.

2. Medical Expenses

The jury awarded Charlene Breaux $3,000.00 for past and future medical expenses. Her total past medical expenses on the date of trial were $2,505.00. She argues the jury erred in not awarding her $2,600.00 *673 for future installation of braces required to treat her TMJ condition. We agree.
Dr. Philip Weatherspoon, who treated Charlene for her TMJ problem, unequivocally stated her TMJ condition would become symptomatic if braces were not installed to permanently stabilize the jaw. Statistically, he explained, more than ninety (90%) percent of TMJ patients who do not have braces installed will suffer a recurrence of TMJ symptoms eventually. Although Wal-Mart attempted to discount Dr. Weatherspoon's testimony, it did not offer any expert contradictory medical evidence. The jury erred in failing to award Charlene medical expenses for installation of the recommended braces. Dr. Weatherspoon further testified it will cost $2,600.00 to install and maintain braces. Accordingly, we amend the jury's award of medical expenses to Charlene increasing it to include this figure. The jury's award of $97.00 for Halynn Breaux's medical expenses is supported by the record; and, we will not disturb it on appeal.

3. Lost Earning Capacity

Charlene also contends the jury abused its discretion in awarding her only $350.00 for lost wages. She argues the jury should have awarded $1,290.00. Because lost earning capacity cannot be calculated with mathematical certainty, a trier of fact is afforded much discretion in making such determinations. However, the jury must have a reasonable basis for exercising its discretion and the record must contain a factual basis for such an award. Bailes v. U.S. Fidelity & Guaranty Co., 512 So.2d 633 (La.App. 2d Cir.1987).
The medical records reveal the emergency room physician, who examined Charlene, noted she could return to work in one week. When Charlene returned to the hospital shortly thereafter for an unrelated ovary infection, the same physician noted she could return to work by July 6, 1991. Charlene testified she did not return to work after August, 1991 because the daycare cost for her minor children would equal or exceed the salary she could earn working. The jury had a reasonable factual basis to conclude Charlene's decision not to return to work was based on factors other than her inability to work as a result of the injuries she sustained. We will not disturb this portion of the jury's award.

4. Loss of Consortium

Next, appellants complain the jury abused its discretion by refusing to award John Breaux and Halynn Breaux damages for loss of consortium. The compensable elements of a loss of consortium claim are loss of society, sex, service and support. See LSA-C.C. 2315. See also Girard v. Price, 606 So.2d 990 (La.App. 3rd Cir.1992). Whether a party is entitled to damages is an issue of fact. As mentioned, the jury's factual findings should not be disturbed absent manifest error. Girard, supra., Louthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3rd Cir.1986).
At trial, John and Charlene testified the accident effected their relationship and marriage. However, by earlier deposition testimony, Charlene stated the accident had no effect on their relationship. Given the clear inconsistency in Charlene's testimony, a reasonable factual basis existed for the jury's refusal to award John Breaux damages for loss of consortium.
Appellants further argue the jury abused its wide discretion by not awarding any damages for loss of consortium to Halynn Breaux. Before the accident Charlene was working part time, as many as thirty plus hours per week. Following the accident she stayed home; and attended the needs of her children. She obviously spent more time with them after the accident than before. While Charlene testified she was often irritable and had less patience with the children than usual, it is doubtful this would have had any effect on Halynn, then only two years old. Further, John Breaux testified when Charlene was not "up to taking care of the children" he would have to do so. The testimony supported the jury's conclusion that Halynn did not suffer any loss of service or support as a result of Charlene's accident.

*674 DECREE
For the above reasons, the judgment rendered below is amended to increase the award for physical and mental pain and suffering from $2,500.00 to $7,500.00, and to include future medical expenses of $2,600.00. Further, that portion of the judgment reflecting the jury's finding that Charlene was thirty (30%) percent comparatively at fault is amended to reduce her comparative fault to ten (10%) percent. In all other respects the judgment appealed from is affirmed. All costs on appeal are assessed against defendant, Wal-Mart Stores, Inc.
AFFIRMED AS AMENDED.