553 So.2d 922 (1989)
Harvey P. BORDELON
v.
WENDY'S OF NEW ORLEANS, et al.
No. 89-CA-0330.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
Writ Denied February 2, 1990.
*923 Marshall E. Title, New Orleans, for plaintiff-appellee Harvey P. Bordelon.
Randall L. Kleinman, Alphonse M. Thompson, Hulse, Nelson & Wanek, New Orleans, for defendant-appellant Wendy's of New Orleans, Inc. and Continental Cas. Co.
Before GARRISON, KLEES and BECKER, JJ.
KLEES, Judge.
Defendants, Wendy's of New Orleans, Inc., and its insurer, Continental Casualty Company, appeal the judgment of the court below awarding plaintiff damages for injuries received as a result of a slip and fall on defendant's premises. We affirm.
FACTS:
At approximately 9:00 p.m. on November 6, 1986, plaintiff Harvey Bordelon and his brother-in-law Ron Eller visited the Wendy's restaurant located on Judge Perez Drive in Chalmette. The entranceway of Wendy's consists of an outer door and an inner door with a small area in between the two doors. After entering the outer doorway, Mr. Bordelon slipped and fell on a dark substance thought to be coke or root beer and partially melted ice. Plaintiff fell on his back and was unable to get up. He was taken by ambulance to a hospital where x-rays were taken. At the hospital he was given pain medication for a sprained back and was subsequently discharged.
The next morning Mr. Bordelon's knee was swollen and he could not stand up. His mother brought him to a hospital emergency room where his knee was tapped and drained. On November 10, Mr. Bordelon was seen by Dr. Raoul Diaz, who drained the knee once again. Dr. Diaz recommended knee surgery. On December 5, Mr. Bordelon was examined by Dr. Robert Ruel, who also recommended surgery.
Dr. Ruel performed an arthroscopy on the plaintiff's knee on January 14, 1987. Dr. Ruel found the plaintiff to have sustained various injuries to the structure of the knee including: a frayed medial meniscus, torn synovial strands, an irregular lateral meniscus, and a frayed coronary ligament. Mr. Bordelon's knee had to be tapped and drained on two occasions subsequent to the surgery.
Upon recommendation of Dr. Ruel, Mr. Bordelon began physical therapy three times per week on February 23, 1987. Mr. Bordelon was allowed to return to work at Popeye's restaurant on April 13, 1987, and he continued therapy off and on through November of 1987. However, even after returning to work, Mr. Bordelon continued to experience soreness during the night and when standing for extended periods of time. Dr. Ruel assessed plaintiff's permanent disability at 10%.
The jury awarded damages in the amounts of $14,000.00 for past and future medical expenses; $50,000.00 for past and future pain and suffering; $12,500.00 for permanent partial disability; and $2,500.00 for loss of earnings. Wendy's asserts as error, the following:
1) the trial court was in error in refusing to give the defendants jury instructions.
2) the trial court improperly instructed the jury concerning defendants burden of proof;
3) the damage award was excessive.
*924 Wendy's first argues that the trial court committed manifest error in refusing to use the jury instructions submitted by defendant. It is well settled that a trial judge is not required to give instructions submitted by either party as long as the instructions actually given point up the issues in light of the evidence presented. McCarter v. Liberty Mutual Ins. Co., 436 So.2d 726 (La.App. 4th Cir.1983). Wendy's argues that the jury should have been instructed to find that there is no liability of a store owner who, after becoming aware of the hazard, does not have a reasonable opportunity to correct the condition. They rely on Harrington v. Kroger Co., Inc., 279 So.2d 814 (La.App. 2d Cir.1973) for this proposition. That case involved a situation in which a Kroger employee "heard the bottle drop, called on the intercom for a porter to clean it up, and saw [the victim] fallall within a matter of seconds." In the instant case, a Wendy's employee testified that someone (she couldn't remember who) came in and told her that there was a spill. There was no testimony as to how long the substance had been on the floor, and the employee did not reveal how much time elapsed between the time that she was alerted to the spill and the time that she asked someone to clean it up. Nor could she remember who she asked to clean up the spill. She did testify that it was just seconds from the time she asked someone to clean up the spill to the time that she learned of Mr. Bordelon's fall. In addition she testified that there wasn't any specific person in charge of looking for spills or keeping the floor free of spills. In Harrington, the defendant proved that the hazard had only existed for seconds prior to the plaintiff's fall. Therefore, the court found that the defendant had no opportunity to warn the plaintiff or correct the hazard. In the case at bar there is no testimony as to how long the hazard existed. Thus the instruction was properly excluded.
Defendant further contends that the jury instructions were improper because: a) they impose absolute liability on the defendant, b) they are confusing, and c) they imply that Wendy's was under a duty to provide testimony of all its employees to establish that none of them was responsible for the hazard. After reviewing the jury instructions, we find defendants contentions to be without merit. The record reveals that the trial court gave negligence instructions which fairly, simply and unambiguously pointed out the issues presented by the evidence. We find that the instructions did not imply that the defendant was absolutely liable, nor did they suggest that Wendy's was under a duty to provide testimony from all of its employees to establish that none was responsible for the spilled beverage.
Wendy's next contends that the burden of proof should not shift to defendant after plaintiff proves that he slipped on a foreign substance. Wendy's also submits that the high degree of care applied to self service stores should not be applied to fast food restaurants. Store owners have a duty to protect their customers from foreign substances or objects on the floor, and this includes a duty to take reasonable protective measures including periodic inspections, to keep aisles and floors free of such substances or objects which may cause customers to fall. Gonzales v. Winn Dixie Louisiana, Inc., 326 So.2d 486 (La. 1976); Kavlich v. Kramer, 315 So.2d 282 (La. 1975); Brown v. McDonald's Corp, 428 So.2d 560 (La.App. 4th Cir.1983). Once the plaintiff establishes that he has fallen on a foreign substance or object on the floor, the burden shifts to the defendant to exculpate itself from the presumption that it is negligent. Gonzales v. Winn Dixie, supra; Kavlich v. Kramer, supra; Brown v. McDonald's Corp., supra. A self-service store, which requires customers to focus their attention on shelves and to handle merchandise, increases the risk of harm from objects dropped on the floor by customers and correspondingly increases the storekeeper's duty to minimize risk by frequent inspections and cleanups. Gonzales v. Winn Dixie, supra; Kavlich v. Kramer, supra.
Defendant argues that the policy reasons for the burden shift and high degree of care to which store owners are held are *925 present only in the case of self-serve stores.[1] Defendant bases its argument on dicta in Kavlich v. Kramer, 315 So.2d 282 (La.1975). The Court in Kavlich stated:
"Self-service grocery stores require customers to look for and to find the objects which they wish to purchase. These objects are placed upon shelves of various sizes and heights. Discernment of a particular object for purchase requires fairly strict surveillance of the shelving in order to discover the item desired. Numerous items displayed upon shelving along the aisles or walkways in self-service stores entice the customers to focus their eyes upon the display rather than on the surface upon which they walk. Guy v. Kroger Company, 204 So.2d 790 (La.App. 2d Cir. 1967); Dever v. George Theriot's Inc., 159 So.2d 602 (La.App. 3rd Cir.1964). It is not uncommon that owners and managers of the stores, their employees, or customers drop objects into these aisles which pose a danger to one who inadvertently steps upon the object.
"As we have previously stated, there is no doubt that a piece of banana about the size of a finger was on the floor of this store a few feet from the mat inside the entrance to the store. Mrs. Kavlich was in no position to know under what circumstances the piece of banana came to rest upon the floor. She was in no position to prove that the piece of banana rested on the floor because the employees of the store were negligent. She has established clearly that the piece of banana was there when she entered the store; that she stepped upon the piece of banana; and that it caused her to slip, fall, and be injured. The burden then shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent."
While it is certainly true that walking through a fast food restaurant is not exactly like walking through a grocery store, many of the same risks of injury are present. A fast food restaurant such as Wendy's requires its customers to carry their own food, which is often uncovered. The risk of spills and accidents may be even greater in a fast food restaurant than in a grocery store. In addition, the plaintiff in the case at bar was in the same position as the plaintiff in Kavlich. Mr. Bordelon was in no position to prove when or under what circumstances the beverage was spilled on the floor. We therefore find that the same burden of proof and high duty of storekeepers to keep the premises free of hazards also applies to Wendy's in this case.[2] Defendant offered no evidence as to what caused the spill, how long it had been on the floor, or what clean up and/or inspection procedures Wendy's had in effect at the time of the accident. Thus, the jury correctly imposed liability for plaintiff's injuries.
Finally, the defendant claims that the damages awarded were excessive. Past medical expenses of $8471.96 were stipulated to by both parties. The jury awarded $14,000.00 for past and future medical expenses. Defendant claims that there is no basis for any award greater than the stipulated amount. However, there was testimony by Dr. Ruel that some patients need additional future surgery. Dr. Ruel also testified that plaintiff has an increased chance of developing arthritic problems in his knee. Future medical expenses are speculative by their very nature. Although the possibility of future surgery and/or medical treatment cannot be ascertained with any degree of certainty, future medical expenses are a legitimate item of damages. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La. 1984). In this case, we find that the jury did not abuse its discretion in awarding $14,000 for past and future medical expenses.
*926 Plaintiff was awarded general damages for past and future pain and suffering in the amount of $50,000.00. Defendant maintains that such an award was an abuse of discretion. The initial inquiry must always be confined to whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's "much discretion." It is only after articulated analysis of the facts discloses an abuse of discretion that the award may, on appellate review for articulated reason, be considered either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La. 1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In the instant case, the plaintiff suffered a sprained back and a knee injury severe enough to require surgery. His knee had to be tapped and drained four times. During surgery Dr. Ruel found a frayed medial meniscus which had to be shaved down, a frayed coronary ligament, and torn synovial strands. Mr. Bordelon is a diabetic so the injury took longer than normal to heal and his knee gave out several times due to atrophy of his quadriceps muscles. Dr. Ruel testified that Mr. Bordelon experienced pain in his knee periodically for about a year. In addition, Mr. Bordelon has an increased chance of developing arthritis in his knee because of the injury. He also experiences pain at work, where he must stand for extended periods of time. Because of the injury, Mr. Bordelon has given up bowling. We find after reviewing the record that the jury did not abuse its "much discretion" in awarding plaintiff $50,000.00 for past and future pain and suffering.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] This case was tried on July 5, 1988. We note that La.R.S. 9:2800.6 would control here had this case been tried on or after July 18, 1988.
[2] The standard has been applied in the past to businesses other than self-serve stores, See Brown v. McDonald's Corp., 428 So.2d 560 (La. App. 4th Cir. 1983); and Fitzgerald v. Gulf Intern. Cinema Corp., 489 So.2d 306 (La.App. 4th Cir. 1986).