614 So.2d 1366 (1993)
Rainer M. COURVILLE and Burley J. Courville, Plaintiffs-Appellants,
v.
PIGGLY WIGGLY BUNKIE CO., INC. and State Farm Fire and Casualty Insurance Co., Defendants-Appellees.
No. 92-240.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*1367 Elizabeth Erny Foote, Alexandria, for plaintiffs-appellants.
James Berry Reichman, Alexandria, for defendants-appellees.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
DOMENGEAUX, Chief Judge.
Rainer and Burley Courville filed suit for injuries sustained when Mrs. Courville was struck by a carton of ice cream which fell from a freezer in the Piggly Wiggly in Bunkie, Louisiana. The jury found that the plaintiffs had proved the existence of a hazardous condition but also that the store's employees had acted reasonably for the safety of the store's customers. Judgment was entered dismissing the plaintiffs' suit, and the plaintiffs have appealed.

FACTS
Mrs. Courville testified that she and a friend, Annie Ducote, were shopping together in the Piggly Wiggly on May 12, 1989. At the time of the accident both women were on the freezer aisle, with Mrs. Courville near the ice cream, which was on sale, and Mrs. Ducote a few doors down near the orange juice. Mrs. Courville testified that she was unsuccessful at her first attempt to open the freezer door, so she pushed her cart away, got in front of the door and opened it with both hands. At that point, at least five half gallon cartons *1368 of ice cream fell from the freezer; one skinned Mrs. Courville's left shin from the knee to the foot and left a small indentation on her foot. Approximately six weeks later, Mrs. Courville developed a ganglion cyst at the point of the indentation. She was treated conservatively for approximately one year after which the cyst was surgically removed.
Mrs. Courville testified that she did not touch any of the ice cream cartons before the accident and that she did not know from which shelf they had fallen. She testified that the store's assistant manager, Troy Lambert, came through some double doors to help her and that he arrived after she had already picked up two of the ice cream cartons. Mr. Lambert offered to take her to a doctor, but she declined.
Annie Ducote testified that she did not see the accident because her back was turned toward Mrs. Courville. However, she immediately turned around after the accident and saw the cartons on the floor. She also returned two cartons to the freezer. She further testified that she and Mrs. Courville were the only persons on that aisle and that Mr. Lambert had come from another area of the store to help them.
Troy Lambert's testimony differed significantly from that of the two women. He testified that he was on the freezer aisle straightening cartons a few doors away from Mrs. Courville shortly before the accident. He stated that he did not see Mrs. Ducote on the aisle. He did see someone standing with the freezer door open about 10 to 15 seconds before the ice cream cartons fell, although he did not see that person touch any of the ice cream. After the accident, he recognized Mrs. Courville and went to her assistance.
The defendants offered the testimony of several store employees and an engineering expert to show that the store's procedures were reasonably designed to keep the premises free of any hazardous conditions. The testimony of these witnesses will be discussed below.

LIABILITY
On the date of the accident, May 12, 1989, La.R.S. 9:2800.6 read as follows:
§ 2800.6. Liability of a merchant for injuries sustained by a person while on the premises of the merchant
"A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
"B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
"C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
"D. `Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business."
Under this statute and under prior jurisprudence, the burden of proof shifts to the defendant to exculpate himself from liability once the plaintiff has proved that the accident was the result of a premises hazard. See Bell v. Bestyet Discount Foods, 372 So.2d 781 (La.App. 2d Cir.1979). The jury found that the plaintiffs had proved the existence of a premises hazard.
*1369 Mrs. Courville testified that the ice cream fell without her touching it. Mrs. Ducote testified that she and Mrs. Courville were the only persons on that aisle. Although Troy Lambert's testimony was contradictory in some respects, he could not say that Mrs. Courville touched the ice cream or that another customer contributed to the accident. Further, the defendants' engineering expert, Fred Vanderbrook, testified that opening the freezer alone would not have produced enough vibration or suction to cause an object to fall out of the freezer. He did state that vibrations combined with improper stacking could cause such a fall. We find no error in the jury's conclusion that a premises hazard existed. See Matthews v. Schwegmann Giant Supermarkets, Inc., 559 So.2d 488 (La.1990).
In falling merchandise cases, a plaintiff ordinarily will be required to rely on circumstantial evidence to prove the pre-existing hazard or dangerous condition, but where such evidence preponderates in favor of a finding of a premises hazard, then the burden shifts to the defendant to exculpate itself from fault by showing it exercised reasonable care through appropriate clean up and inspection procedures or otherwise. Bell v. Bestyet Discount Foods, supra, at 784.
The Courvilles argue on appeal that the jury erred in concluding the defendants met this burden. After reviewing the record, we must agree that the jury finding on this question is manifestly erroneous.
Roger Lambert, the store manager (and father of assistant manager Troy Lambert), testified that he had six stockers on duty, with each stocker assigned to an aisle. He identified Tommy Ducote as the only employee who would have checked the shelves on the freezer aisle that day. Mr. Lambert testified that employees checked the floor each hour and signed a log after each inspection. He stated he personally had given stockers instructions to watch for items that might fall from the shelves, although there was no sign-in procedure for inspections of the shelves as there was for the floors. Mr. Lambert was not in the store at the time of the accident, and he found out about it from his son, Troy. He did not check the shelves that day, nor did he ever determine if Mr. Ducote had checked the shelves before the accident. He stated that the ice cream salesman initially stocked his own product that morning and that Mr. Ducote would have had no reason to recheck the shelves unless the ice cream was on sale.
Tommy Ducote testified that his job was to stock the freezers and to unload trucks. The accident occurred on his usual working day, but he had no specific memory of being in the store at that time. He stated that ice cream is stocked by a salesman, and he would not restock unless the product was on sale. (Mrs. Courville testified that the ice cream was on sale that day.) He could not describe the condition of the shelves that day, nor could he say if he restocked the freezer before the accident. He further testified that he was not told to check the freezers on a daily or hourly basis to make sure that everything was stocked correctly.
Troy Lambert's testimony at trial differed from his earlier deposition testimony and from the trial testimony of other witnesses. Mr. Lambert testified in his deposition that the hourly inspection of the floors also included an inspection of the shelves. Harry Sutton, the steward who inspected the floors and signed the log book, testified at trial that he did not inspect the shelves. Mr. Lambert also said in his deposition that the freezers were inspected monthly by Anderson's Refrigeration, whether or not there was a problem. Yet, his father, Roger Lambert, testified that the freezers were never inspected because there was never any problems with them.
David Smith owned the Piggly Wiggly as well as several other businesses in Bunkie. He testified that his responsibility in the store was the freezer aisle, with his manager and assistant managers being assigned to other aisles. However, the store manager, Roger Lambert, did not mention this shared responsibility among the managers in his testimony.
*1370 La. R.S. 9:2800.6 requires a merchant to introduce the testimony of those employees and management personnel whose job responsibilities included the inspection or clean up of the accident area. After reviewing the testimony of store personnel, we must agree with the succinct statement in plaintiffs' brief that "the checking of the shelves was everyone's responsibility and no one's responsibility." The record reveals confusion among the employees as to their job responsibilities and as to what, if any, safety procedures were in effect.
Troy Lambert testified that he was working on the freezer aisle just before the accident. However, David Smith's testimony that he was responsible for the freezer area implies that Mr. Lambert's responsibilities were elsewhere. Troy Lambert also testified in his deposition that "buildup codes" on the shelves told the stockers how much merchandise to put on each shelf, yet other witnesses stated that the codes were only used for inventory purposes.
Everyone did agree that Tommy Ducote was the one employee who would have stocked the freezer shelves that day. Everyone also agreed that when a product such as ice cream was on sale, the stocker would have cause to recheck the shelves, even though the product may have been initially stocked by an outside salesman. Yet, Mr. Ducote was uncertain as to when he last stocked or checked the shelves before the accident.
We are not suggesting that detailed records showing when shelves are straightened or inspected will be necessary to exculpate a merchant from responsibility in a falling merchandise case. However, the merchant must make a minimal showing that its procedures for inspection and clean up were reasonable. The many inconsistencies and absence of any corroboration in the testimony of the defendants' witnesses convince us that defendants have not made such a showing.

QUANTUM
The court of appeal may fix the quantum in a suit for damages, where the plaintiff's demands based on liability were rejected at trial, but the court of appeal reverses the liability finding on appeal. Guillory v. Keel, 502 So.2d 1159 (La.App. 3d Cir.1987), writ denied, 505 So.2d 1144 (La.1987).
A claimant's burden is to prove by a preponderance of the evidence a causal connection between the accident and the injuries. Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.1991), writ denied, 580 So.2d 923 (La.1991).
Mrs. Courville testified that six weeks after the accident she developed a ganglion cyst on her foot in the same place as the indentation caused by the carton. She first sought treatment from Dr. Donald Hines, who aspirated the cyst and injected her foot with cortisone. Dr. Hines testified that ganglion cysts are usually caused by trauma and can take weeks or months to form. The fact that the liquid removed from the cyst was clear, as opposed to bloody, indicated that it was not caused by a recent trauma. Dr. Luke Bordelon, who treated Mrs. Courville for one year before he surgically removed the cyst, agreed that ganglion cysts are associated with trauma. We find plaintiff has proved that the ganglion cyst developed as a result of her accident in the Piggly Wiggly.
Dr. Bordelon treated Mrs. Courville from July 1, 1989 through December 18, 1990, performing surgery on June 27, 1990. He treated her with cortisone injections and prescribed anti-inflammatory medication and special foot wear. He finally recommended surgery when the cortisone and anti-inflammatory medication did not relieve the swelling and pain caused by the cyst. He released her with a 10% permanent impairment of the foot and a 4% impairment of the lower body. He testified that she probably would continue to experience pain and scarring.
Mrs. Courville, who was 56 at the time of the trial, testified that she curtailed many activities because of the pain and swelling caused by her injury. She could no longer participate in several charitable and religious organizations, and she had to rely *1371 upon her husband's help in the housework and gardening. She described the cortisone shots as painful. Her friends testified that she became very irritable after receiving the injections.
Mrs. Courville also contends that the stress from her injury caused an increase in her blood pressure and cholesterol levels. Dr. Phillip Lindsay testified that her blood pressure medication was doubled during the period of her injury. However, he was not the treating physician who increased the dosage, thus, he did not know the reason for the increase. Dr. Lindsay testified that blood pressure can be aggravated by factors other than stress and that Mrs. Courville had a chronic cholesterol problem. We find that Mrs. Courville has not proved that her blood pressure and cholesterol problems were either caused or aggravated by the accident.
In Bivalacqua v. Aube, 493 So.2d 209 (La.App. 5th Cir.1986), the court found that $18,000 in general damages was the lowest possible award for an injury requiring a skin graft of the foot and leaving a permanent indentation in the foot approximately one inch deep. In Bergeron v. Firestone Tire and Rubber Co., Inc., 482 So.2d 54 (La.App. 5th Cir.1986), writ denied, 484 So.2d 136 (La.1986), the court affirmed an award of $30,000 for a "crushing" foot injury that resulted only in multiple muscle strains, with pain and discomfort continuing for an indefinite time. Considering Mrs. Courville's continuing disability and pain, as well as the lengthy, painful period of treatment, we find an award of $30,000 in general damages to be appropriate. Mrs. Courville is also entitled to recover special damages as follows: $6,158.41 in expenses for treatment and surgery; and $313.36 in medication prescribed by Dr. Bordelon. We are unable to determine which, if any, of the other prescriptions claimed are directly related to Mrs. Courville's foot injury.
Burley Courville testified that as a result of the accident, he had to help his wife with the housework, including mopping, washing and ironing. He also had to help out with his wife's flower beds, which had been a source of pride to her before the accident. However, Mr. Courville admitted that he had done some housework and gardening before the accident. We find an award of $1,500 to be appropriate for Mr. Courville's loss of consortium claim. See Warner v. Great Atlantic & Pacific Tea Co., Inc., 583 So.2d 61 (La.App. 2d Cir.1991).
Because of our holding herein, we need not discuss the plaintiffs' remaining assignments of error concerning the defendants' amended answer pleading comparative fault and possible irregularities in the jury verdict. We note that the record contains no evidence of any comparative fault on Mrs. Courville's part and that the jury poll showed that more than the minimum number of jurors required by La.C.C.P. art. 1797 concurred in the verdict.
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of plaintiff, Rainer Courville, in the amount of $36,471.77 and plaintiff, Burley Courville, in the amount of $1,500, with legal interest on both awards, and against defendants, Piggly Wiggly Bunkie Co., Inc. and State Farm Fire and Casualty Insurance Co., Inc.
Costs of this appeal are assessed to defendants-appellees, Piggly Wiggly Bunkie Co., Inc. and State Farm Fire and Casualty Insurance Co., Inc.
REVERSED AND RENDERED.