640 So.2d 733 (1994)
Charlie Gerald THOMPSON, Plaintiff-Appellant,
v.
STALNAKER'S RESTAURANT INC., et al., Defendants-Appellees.
No. 93-1447.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
Writ Denied October 14, 1994.
*734 Michael L. Glass, William H. deLaunay Jr., Alexandria, for Charlie Gerald Thompson.
Daniel G. Brenner, Alexandria, for Stalnaker's Restaurant, Inc. et al.
Before GUIDRY, C.J., and YELVERTON and WOODARD, JJ.
WOODARD, Judge.
This appeal arises out of a lawsuit for damages sustained by plaintiff, Charlie Gerald Thompson, when he slipped and fell in Stalnaker's Restaurant. Defendants are Stalnaker's Restaurant and its general liability insurer, Britamco Underwriters, Inc.

FACTS
Stalnaker's Restaurant is a buffet style restaurant where the customers slide a tray along a buffet line and serve their own food. On the evening of Friday, October 11, 1991, at approximately 7:30 p.m., Mr. Thompson went to Stalnaker's for dinner. He proceeded through the buffet line and selected first his food, and then at the end of the line, a drink. These items were placed on a tray, which Mr. Thompson picked up and proceeded to carry to a table. When he got approximately three to four feet away from the buffet line, Mr. Thompson slipped and fell to the floor on his buttocks. He described the substance which caused him to slip as being crunchy and slippery, like ice.
*735 As a result of the accident, Mr. Thompson sustained disc herniations at L3-4 and L4-5. He underwent conservative treatment and was unable to return to any type of work for one year. Surgery is not recommended at this time, but may be a possibility in the future.
Mr. Thompson filed suit against Stalnaker's and Britamco, and a jury trial was held on May 25 through May 27, 1993. At the close of the trial, plaintiff moved for directed verdict on the issue of comparative fault. As there was no evidence of plaintiff's fault, the directed verdict on this issue was granted in his favor. The jury subsequently found there was a hazardous condition on the floor of Stalnaker's restaurant which caused Mr. Thompson's injuries. The jury further found, however, that the restaurant exercised reasonable care to keep the passageway free of the hazardous condition. Thus, judgment was rendered in favor of defendants.
Mr. Thompson appeals this judgment, asserting that the jury erred in concluding Stalnaker's Restaurant exercised reasonable care in keeping its aisles, passages, and floors in a reasonably safe condition. For the following reasons, we reverse.

LAW
La.R.S. 9:2800.6 applies to a claim brought against a merchant for damages from a fall resulting from a "condition existing in or on a merchant's premises." La.R.S. 9:2800.6 B. One who sells food at a fixed place of business is a "merchant." La.R.S. 9:2800.6 C(2). The statute sets forth the plaintiff's burden of proof as follows:
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
The parties agree that Mr. Thompson was not at fault in causing the accident. The jury found that a hazardous condition existed on the floor of Stalnaker's Restaurant and it was this hazardous condition that caused Mr. Thompson's injuries. As this finding has not been assigned as error on appeal, the only issue for our determination is whether Stalnaker's used reasonable care to keep the premises free of hazardous conditions which might reasonably give rise to damage. This duty of care requires that reasonable protective measures, including periodic inspections, must be undertaken to ensure the premises are kept free from substances that might cause a customer to fall. Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3 Cir.1993). (emphasis added).
Howard Stalnaker, owner of the restaurant, testified regarding his policy for checking the floor for spills. He stated that his employees are verbally instructed to watch for spills to the best of their ability while performing their primary responsibilities of waitressing, bussing tables, and serving food. If a spill is noticed, it is to be cleaned up immediately. There are no scheduled periodic inspections and no one is assigned a specific area of the restaurant. Mr. Stalnaker stated he reminds his employees to watch for spills throughout the evening.
Although Stalnaker's had a policy for checking the floors, albeit general and nonspecific, there is no evidence that this policy was actually adhered to on the night of Mr. Thompson's accident. In fact, the evidence establishes the contrary. Several of Stalnaker's employees testified at the trial regarding this issue; Bobbie Boney, the head waitress, Terri Risner, a buffet worker, Jerri Risner, a waitress, and Derrick Boyd, a busboy. When asked about checking for spills, Ms. Boney testified, "If I'm not busy I'll walk around to see." (emphasis added). She further testified:

*736 Q. Now, Friday nights, you're busy, are you not?
A. Friday, yes, sir.
Q. So, based on that, if everyone in the restaurant ... [is] busy on a Friday night, you don't know how long it's been since someone last checked the floor to see if there was anything on it, do you?
A. No, sir.
Jerri Risner testified, "[A]nytime the waitresses aren't busy, they're doing something, they're watching [for spills]." (emphasis added). Again, however, she agreed Friday nights were busy. She could not remember the last time, prior to Mr. Thompson's slip and fall, that she had checked the floor for spills.
The fact that the floor is not checked when the employees are busy was also confirmed by Terri Risner. She testified:
A.... [I]f it's not a busy night, we're always looking at the floors to see if there's anything....
Q. Okay. But the night of the accident, it was a busy night?
A. It was busy that night, yes, sir.
Derrick Boyd, the busboy, stated he checked the floor when he "had time." When asked whether he checked the floor on the night of Mr. Thompson's accident, he replied that he looked for spills but he could not remember when he did so, or whether he specifically looked at the floor in the area where Mr. Thompson fell.
Stalnaker's usually serves 400-500 people between 5:00 and 9:00 p.m. The busiest hours are from 6:00 to 8:00 p.m. Mr. Thompson was there at 7:30 p.m. Mr. Stalnaker testified he does not increase his staff enough on busy nights so that the head waitress can check the floor as she does on a slow night. In fact, he admitted that a patron is probably safer in Stalnaker's on a slow night than on a busy night.
For the purposes of this case, we are not concerned with the reasonableness of the protective measures allegedly employed by Stalnaker's most of the time; i.e. on slow week nights when they serve an average of 75 people. What we must decide is whether the protective measures actually employed by Stalnaker's on the night of the accident were reasonable.
Whether the protective measures employed by a merchant are reasonable is determined in light of the circumstances in each case; the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space used for customer service, the volume of business, the time of day, the section of the premises, and other such considerations. Saucier, supra. Stalnaker's restaurant is a business that involves large quantities of food and drinks with ice. On the night of the accident, there was a high volume of business. The area where the accident occurred is a high traffic area where busboys constantly pass with their carts and waitresses pass on their way to refill drinks; both pass to and from the kitchen. The risks that food, water or ice may be spilled on the ground as the employees perform their duties are great. In fact, Jerri Risner testified spills are a pretty common occurrence in the area where Mr. Thompson fell.
When customers walk through this high traffic area, they are carrying trays of food which prevent them from seeing the floor. A patron in a self-service business reasonably assumes that the aisles are clear for passage. Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006 (La.1992). Furthermore, the higher duty that self-service stores have to minimize risks by frequent inspections and cleanups also applies to self-service type restaurants where customers are required to carry their own food. Bordelon v. Wendy's of New Orleans, 553 So.2d 922 (La.App. 4 Cir.1989), writ denied, 558 So.2d 1129 (La. 1990). (emphasis added).
In light of this high duty of care and the conditions in the restaurant on that busy Friday night, it was imperative that there be some employee who was responsible and, more importantly, accountable, for actively and specifically checking the floor of the restaurant, especially the most precarious area near the buffet line. This area should be checked more frequently, not less, since there is a risk that every time a waitress or busboy goes back and forth in that area there is an opportunity for a spill, especially *737 given the admitted fact that personnel are rushed and intent on getting patrons and their tables serviced. In actuality, the restaurant's employees checked the floor less on that night than they usually do. In fact, there is no evidence that anyone actually checked the floor at all on the night of the accident, except perhaps the busboy, whose testimony on this point is equivocal. A policy for checking the floors cannot be effective, or reasonable, if it is not followed.
There was a substance on the floor which caused Mr. Thompson to slip. It is established that the accident was not due to Mr. Thompson's fault. Stalnaker's did not exercise reasonable care under the circumstances. Therefore, if Stalnaker's created the hazardous condition or had actual or constructive notice of the hazardous condition, plaintiff is entitled to recover.
There is nothing in the record to establish who created the hazardous condition or that Stalnaker's had actual notice of the condition. La.R.S. 9:2800.6(C)(1) provides as follows:
"Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
Considering the particular circumstances of this case, we conclude that had Stalnaker's exercised the degree of care required of it, the spill which caused plaintiff's fall would have been discovered.
In sum, we conclude that plaintiff is entitled to damages for the injury he sustained as a result of his fall and the jury's conclusion to the contrary is manifestly erroneous.

DAMAGES
In reversing a trial court's finding of liability to hold the defendant liable in a suit for damages, the appellate court may fix the quantum on appeal. Courville v. Piggly Wiggly Bunkie Co., 614 So.2d 1366 (La.App. 3 Cir.1993).
Mr. Thompson was sixty-four years old at the time of the accident. Before the accident, he had no history of back problems or back pain. The accident resulted in herniated discs which are impinging on the nerve roots at the L3-4 and L4-5 levels. Mr. Thompson underwent medical treatment for approximately one year. He is entitled to an award for medical expenses in the stipulated amount of $7,337.26.
Mr. Thompson was unable to return to his employment as a tile worker for approximately one year. He had partially retired before the accident, and from January 1, 1991 through October 11, 1991, the date of the accident, he earned $8,000.00. In light of this wage history, we find Mr. Thompson is entitled to $10,000.00 for lost wages.
Mr. Thompson suffers from back pain and numbness in his leg and foot. He testified the pain associated with his back injury was very severe for the first six months. The pain is less severe now, but it is a constant pain that will continue indefinitely. The injury has rendered Mr. Thompson much less active and he is unable to fish, hunt, and work in his yard and garden as he did prior to the accident. In light of these considerations, we find he is entitled to an award for general damages in the amount of $115,000.00.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of plaintiff in the following amounts: $7,337.26 for medical expenses, $10,000.00 for past lost wages, and $115,000.00 for general damages, all with legal interest. Costs at the trial level and on appeal are assessed to defendants-appellees.
REVERSED AND RENDERED.