JjSAUNDERS, Judge.
Plaintiffs-appellants, Rumae Nell Andrus and J.B. Andrus, appeal the jury’s award of quantum for injuries and damages arising out of a multiple vehicle accident. Defendant, State Farm Mutual Automobile Insurance Company, answered plaintiffs’ appeal complaining of errors in the form and content of the judgment rendered and in the assessment of costs. Intervenor, Evangeline Parish School Board, also appeals adopting the brief filed by plaintiff, Rumae Nell An-drus, as its own. Intervenor makes no independent demand. We affirm the judgment as amended; reform the judgment to conform with the verdict; and affirm the judgement as to costs.

FACTS

On Thursday, May 23, 1991, at approximately 5:15 p.m., plaintiff, Rumae Nell An-drus (hereinafter ANDRUS), was involved in a four car collision on Johnston Street in Lafayette. ANDRUS was returning home from a meeting she had attended in connection with her job as an evaluating teacher, i.e., Master Teacher under the now defunct LaTip-LaTep Program. It was raining as she stopped behind a 1980 Buick Regal operated by Jennifer Angelle, who was waiting to make a left hand turn. Suddenly, AN-DRUS’S vehicle was struck from the rear by a 1983 Chevrolet Silverado pickup truck owned by E.W. Castille and operated by Mary Castille. The force of the collision propelled the ANDRUS vehicle into the rear of the Buick, resulting in her Pontiac being declared a complete loss. ANDRUS was transported to Our Lady of Lourdes Regional Medical |2Center (hereinafter OLOL) with head and mid to upper back pain. The involvement of the fourth vehicle is not revealed in the record.
Between the time of the accident and the point at which the ease went to trial, all parties involved had settled or had been dismissed except for the plaintiffs, Rumae Nell Andrus, her husband, J.B. ANDRUS, and the defendant, State Farm Mutual Automobile Insurance Company (hereinafter STATE FARM INSURANCE), as the uninsured/un-derinsured motorist carrier for ANDRUS’ employer, the Evangeline Parish School Board. Further, it was stipulated by and between those parties that the ANDRUS’S had received $110,000.00 from third parties involved in the accident, and that STATE FARM INSURANCE’S liability, if any, would only be for any damages sustained by the plaintiffs in excess of $110,000.00.
Although STATE FARM INSURANCE’S liability was not specifically admitted by stipulation, that question was not litigated at trial nor was it raised on appeal, therefore, we will assume that if the plaintiffs’ damages were found to exceed $110,000.00, STATE FARM INSURANCE would be hable for same. The only issues raised are insufficient quantum argued by plaintiffs, and incorrect form of the final judgment and assessment of court costs argued by defendant, STATE FARM INSURANCE.
The jury in this case reached the following verdict:
“What is the amount of damages, if any, which you feel would adequately compensate petitioner, Rumae Nell Andrus, for any injuries which she may have sustained as a result of the accident of May 23, 1991?
A.) Past and future physical pain and suffering $15,000.00
B.) Past medical expenses $25,000.00
C.) Future medical expenses $20,000.00
D.) Past loss earnings $27,160.95
E.) Future loss earnings and lost earnings capacity $ -0-
F.) Past and future mental pain and suffering, loss of physical function and loss of capacity for enjoyment of life $10,000.00
Total $98,160.95
What is the amount, if any, which would adequately compensate petitioner, J.B. An-drus, for any damages which he may have sustained as a result of the accident of May 23, 1991?
A.) Loss of consortium $ -0-”
On appeal, appellants argue the awards for (a) past and future physical pain and suffering, and U(b) past and future loss of physical *277 function and loss of capacity for enjoyment of life, are inadequate. Plaintiffs also argue that the trial court abused its discretion in making no award to ANDRUS for future loss of earnings and/or earning capacity and to J.B. ANDRUS for loss of consortium.
It was established at trial that ANDRUS had three physical injuries or conditions which were related or attributable to her May 1991 accident: (1) a compression fracture of her T-ll vertebra; (2) a herniated disc at C — ¾; and (3) TMJ[1] arthralgia. All of the three conditions required extensive treatment for a period of more than two years. Both the compression fracture and the TMJ problems were treated with splints and braces, and the herniated disc required surgery.
Dr. John Cobb treated ANDRUS for her compression fracture at T-ll. He first treated her at OLOL on the day of the accident. He fitted and treated her with a Jewit brace. The brace fit from the pelvis to the upper chest area and prevented her from bending. According to Dr. Cobb, ANDRUS wore the brace for approximately six months: the first three to four months during her pain hours, and intermittently for the next two to three months. At a follow-up visit on June 5, 1991, ANDRUS continued to experience problems with her neck and back, but was even more troubled with headaches and facial pain.
Dr. Cobb communicated his suspicions of TMJ disorder to ANDRUS, and she soon consulted with her dentist, Dr. Philip Vid-rine. He, too, suspected TMJ problems and referred ANDRUS to Dr. Mark Coreil, an orthodontist. Dr. Coreil confirmed the suspicions of Drs. Cobb and Vidrine and fitted ANDRUS with a jaw splint. ANDRUS began wearing the splint on June 28, 1991. According to Dr. Coreil’s notes of her July 8th visit, she responded well to the appliance, and on her September visit, ANDRUS reported that upon her initiative, she was wearing the splint only at night.
On July 17, 1991, ANDRUS returned to see Dr. Cobb at which time he found the compression fracture healing. But in September of that year, ANDRUS was still experiencing neck and back pain. This prompted Dr. Cobb to order an MRI. The MRI was done in early October, and on the plaintiffs’ subsequent visit, Dr. Cobb told her he found some spondylosis in the cervical spine, particularly at G-%, but he was not sure if that was the basis of her neck pain. This was the last time he treated ANDRUS until June 1992, when ANDRUS returned again experiencing neck pain and back pain upon prolonged standing or sitting.
During the period June 1991 through December 1991, ANDRUS was also treated by Dr. |4Oscar Rodriguez, her family internist. Dr. Rodriguez either treated or referred her to other physicians for a number of complaints: a stomach ulcer, depression and stress, and her continuing complaints of neck pain. Dr. Rodriguez had treated ANDRUS for a stomach ulcer, stress, and depression in the early 1980⅛, however, her medical records from this time period were unavailable. He found that the reoccurrence of the mental problems and her ulcer flare-up were attributable, in part, to the accident, and in part, to the numerous medications, analgesics and anti-inflammatories, necessary to control her pain and inflammation from the auto accident. It was Dr. Rodriguez who referred ANDRUS to Dr. Robert Rivet for the neck pain.
Dr. Rivet first saw ANDRUS on December 20, 1991. Much like Dr. Cobb, he strongly suspected a disc problem at C-¾ and ordered a myelogram to confirm his suspicions. Dr. Domange did the myelogram on December 31,1991, and based on its result— “cervical spondylosis with nerve root fracture at 5 C-%” — Dr. Rivet did a fusion of the involved area on January 8, 1992. After discharge from the hospital, medical treatment required that she wear a hard collar to support her neck during her day hours and a soft collar at night. Dr. Rivet informed her she could discontinue wearing of the collars at her March 30, 1992, follow-up visit.
ANDRUS had worked the fall semester of the 1991-1992 school year, but missed the spring semester due to the cervical surgery. *278 She returned to teaching in the fall of 1992, but was only able to work about six weeks due to the extreme pain and discomfort associated with her back and neck problems. She returned to her teaching duties in February 1993 after a course of treatment by Dr. Robert Franklin, a specialist in physical medicine and rehabilitation.
Dr. Franklin saw ANDRUS on referral from Dr. Rivet. He noted ANDRUS’ complaints of soft pain throughout the whole cervical range of motion. He diagnosed her with myofacial pain syndrome. He prescribed a posture bra, a TENS unit, home physical therapy (i.e., exercises plaintiff could do herself at home), and he encouraged her to diet.
In February 1993, Dr. Franklin released her to light duty, i.e. not lifting more than 20-25 pounds periodically and not more than ten pounds repetitive lifting and carrying. At that point, she returned to her teaching duties. At trial, Dr. Franklin stated that, in his opinion, ANDRUS should stay on light duty indefinitely as a precautionary measure to avoid further injury, but that he considered teaching to be well within that status.
Medical evidence at trial also showed that ANDRUS was diagnosed with a bipolar dis-orderjgdating to the early 1980’s and during those time she suffered with bouts of severe depression. Additionally, ANDRUS suffered from a peptic ulcer as a teenager.
All of the doctors who treated ANDRUS for her psychiatric problems, i.e., Drs. Smith, Kutz, and Gutierrez, agree that the auto accident contributed to her mental problems. They all also agreed that her condition was one in which she would have alternating periods of mania and depression. Additionally, her internist also concluded that the flare-up of her ulcer problems was also due to the stress from the accident.
J.B. ANDRUS, who complains about the jury’s failure to award loss of consortium damages, testified at trial concerning the facts and circumstances of the accident and the effects that it had on him. He works out of town and was in Canada when the accident occurred. When informed of the accident, he flew home for two weeks before returning to work. His main observations were of his wife’s pain during that initial period and her mental status during her convalescence. He testified that although their four grown children were a great help, ANDRUS suffering and discomfort made him aggravated and frustrated and he had to deal with the genuine concern that his wife would commit suicide.
As to their quality of life together, post-accident, he testified that while she was able to do her job at school, she cannot now do the housework she could before. Neither can she partake in the same hobbies she had before — she no longer works with her roses and they no longer hunt and fish together. Finally, he testified that during her post-operation period when she had to use the Jewit brace, they had no sexual relations, and said that their sex life was still not the same today.

Issues Presented

1.) Whether the trial court erred in awarding $15,000.00 for past and future pain and suffering. 2.) Whether the trial court erred in awarding $10,000.00 for past and future mental pain and suffering, loss of physical function and loss of capacity for enjoyment of life. 3.) Whether the trial court erred in failing to award damages for future loss earnings and lost earning capacity. 4.) Whether the trial court erred in failing to award damages for loss of consortium. 5.) Whether the trial court erred when it easts defendant with interest subject to a credit and with court costs.
We shall address together the first two assignments of error raised by ANDRUS, i.e. the award of $15,000 for past and future physical pain and suffering and $10,000.00 for past and future | ementa! pain and suffering, loss of physical function and loss of capacity for enjoyment of life.

Issue I

Whether the trial court erred in awarding $15,000.00 for past and future physical pain and suffering and whether the trial court erred in awarding $10,000.00 for past and future mental pain and suffering, *279 loss of physical function and loss of capacity for enjoyment of life.
We first address the standard of review by which we determine whether a trial court erred in awarding damages. As recently pointed out by the Louisiana Supreme Court,
“[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).... The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239,158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.”
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), cert. denied, — U.S.—, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Moreover, if this court finds that the trial court erred or abused its discretion, this court can only “raise inadequate awards to the lowest amount the trial court could have reasonably awarded, or lower excessive awards to the highest amount the trial court could have reasonably awarded.” Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 153 (La.App. 3d Cir.), writ denied, 565 So.2d 450 (La.1990); see also, Powell v. Automotive Casualty, 631 So.2d 581 (La.1994); Breaux v. Wal-Mart, 635 So.2d 667 (La.App. 3d Cir. 1994); Migues v. Hebert, 640 So.2d 670 (La.App. 3d Cir.1994).
In light of the Youn opinion, we have reviewed the particular injuries sustained by ANDRUS from the accident and the particular effects that they had on her. Even when we considered the evidence of the injuries and resulting damages in a light most favorable toward the defendant, we find that the trial court’s award of damages to ANDRUS was not reasonable.
|7The record indicates that ANDRUS was formerly a very active woman. She taught school for over ten years. She had been honored numerous times for skills as a teacher and apparently had earned enough respect for her work to be named a Master Teacher. That successful career was placed on hold for over a two year period due to the debilitating injuries that she sustained in this accident. The serious nature of the injuries involved in this case caused her severe pain, discomfort, inconvenience, depression, and flare-ups of ulcer problems. The injury required hospitalization on two occasions, surgery, numerous follow up visits, lengthy physical therapy, the use of braces, i.e., a Jewit brace, a TENS unit, a posture bra, a dental brace, and psychological counseling for depression. All of the treating medical personnel, which included orthopedists, a neurosurgeon, a physia-trist, a psychiatrist, a clinical psychologist, an internist, and an orthodontist were consistent in their views concerning ANDRUS’ medical problems and the cause, i.e., the accident either aggravated pre-existing injuries or directly caused the compression fracture, herniated disc, TMJ disorder, depression and ulcer.
The medical evidence indicates that first, ANDRUS continues to suffer physical pain and mental anguish, second, she is now at a high risk for re-injury, and lastly, that the risk of re-injuring her back compounded by the actual anatomical damage has reduced ANDRUS’ work ability by as much as ten percent (10%). In view of the extensive medical evidence in this case, the length, *280 inconvenience, and discomfort associated •with the treatment, and the debilitating effects on ANDRUS, we find that the trial court erred in assessing the damages incurred by ANDRUS as a result of this accident.
In making a determination of the appropriate damages to award, we have reviewed several cases in which the injured party suffered the same type of injuries, i.e., TMJ disorder, herniated disc, compression fracture of the thoracic vertebra, depression, and peptic ulcer, and who endured the same types of treatment. Mindful of ANDRUS’ injuries and the particular effects that they had on her life and career, we find that the lowest possible award that a reasonable trier of fact could have awarded is $75,000.00 for past and future mental suffering and $125,-000.00 for past and future physical pain and suffering or general damages in the amount of $200,000.00. See American Motorist v. American Rent-All, 579 So.2d 429 (La.1991) (reducing an award for general damages from $300,000.00 to $150,000.00 for injuries sustained in an automobile accident from which the plaintiff suffered a cervical disc injury, was left with a 15% anatomical impairment, and also | gsuffered from severe bouts of depression); Thompson v. Stalnaker’s Restaurant, 640 So.2d 733 (La.App. 3d Cir.), writ denied, 643 So.2d 165 (La.1994) (awarding $115,000.00 in damages for two herniated discs wherein the plaintiff underwent treatment for a period of 1 year, pain was severe for the first 6 months and plaintiff could be in constant pain indefinitely, and where the injury made plaintiff much less active and unable to fish, hunt, and work in his yard); Nugent v. Continental Casualty Company, 634 So.2d 406 (La.App. 3d Cir. 1994) (holding that an award of $10,000.00 was inadequate and raised the award to $40,-000.00 where disc problems caused by an automobile accident resulted in plaintiff suffering severe pain and enduring treatment for a period of 3 years and a general reduction in the plaintiffs general life activity); Hayes v. Richard, 634 So.2d 1384 (La.App. 3d Cir.1994) (affirming an award of $60,-000.00 for a herniated disc wherein the plaintiff was treated over a period of six months and then released by his treating physician to his earlier employment); Farque v. McKinney, 576 So.2d 1191 (La.App. 3d Cir.), unit denied, 580 So.2d 387 (La.1991) (holding that an award of $10,000.00 for general damages was inadequate for cervical injuries and raised the general damages to $60,000.00 where the plaintiff underwent significant diagnostic testing, suffered significant and debilitating pain, and injury requiring surgery); Bowers v. Viator, 625 So.2d 355 (La.App. 3d Cir.1993), writ denied, 633 So.2d 171 (La.1994) (affirming an award of $65,000.00 for the plaintiff who suffered from myofacial pain syndrome and a disc protrusion caused in an automobile accident); Wyble v. Allstate Insurance, 581 So.2d 325 (La.App. 3d Cir. 1991) (affirming an award of $25,000.00 for 1 and ½ years pain and suffering associated with TMJ disorder and a back injury for which the plaintiffs treatment included TMJ splints and a TENS unit); Lejeune v. Cook, 563 So.2d 1218 (La.App. 1st Cir.1990) (holding an award of $12,500.00 was adequate for a plaintiff who suffered with TMJ problems for approximately one year and was successfully treated with splints); Lasswell v. Matlack, 527 So.2d 1199 (La.App. 3d Cir.), writs denied, 532 So.2d 104, and 532 So.2d 153 (La.1988) (reducing an award of damages to plaintiff from $150,000.00 to $100,000.00 for a compression fracture in which the plaintiff endured pain and treatment for a 1 year period and a 15% to 20% functional disability); Coleman v. State, 524 So.2d 1281 (La.App. 3d Cir.1988) (reducing an award of $350,000 to $200,000.00 in general damages to the plaintiff who suffered a compression fracture of the thoracic vertebra which required surgery and 4 months of convalescence time); Schexnayder v. State, 477 So.2d 1175 (La.App. 1st Cir.1985) (reducing an award of $200,000.00 to $100,000.00 in general |9damages to the plaintiff who suffered a compression fracture of a thoracic vertebra and wore a body brace for 3 months including psychiatric treatment, but no surgery).

Issue II

Whether the trial court erred in failing to award damages for future loss of earnings and lost earning capacity.
*281 As to plaintiffs argument that the trial court erred in failing to award future lost wages, this court, in Bordelon v. South Central Bell Telephone Company, 617 So.2d 1387, 1342 (La.App. 3d Cir.1993) recently stated:
“In order to obtain an award for future loss of wages and/or loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248 (La.1991).”
Moreover, we recognize that “[a]wards for loss of future income are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the court must exercise sound judicial discretion in determining these awards and render awards which are consistent with the record and which do not work an injustice on either party.” Smith v. Porche Bros. Lumber and Supply, Inc., 491 So.2d 412, 415 (La.App. 1st Cir.1986)
In the case sub judice, the record is devoid of any substantial evidence that the plaintiff had suffered any loss in future earning capacity. While it was established that the plaintiff retained some residual limitation of her physical abilities, i.e. up to 10%, it was also established that her teaching duties fell within those limits. Thus, there was no evidence of future economic loss. What evidence was introduced on that point was speculative at best. This assignment of error has no merit.

Issue III

Whether the trial court erred in failing to award damages for loss of consortium.
Whether a plaintiff is entitled to damages for loss of consortium is a factual question for the trial court to decide. “This court may not set aside the jury’s finding of fact in absence of ‘manifest error’ or unless their finding is ‘clearly wrong.’ ” Kidder v. Boudreaux, 636 So.2d 282, 285 (La.App. 3d Cir. 1994) (citing Stobart v. State, 617 So.2d 880 (La.1993)).
The evidence in this case concerning ANDRUS’ husband’s, J.B. ANDRUS’, loss of consortium is uncontradicted. J.B. AN-DRUS first heard about the accident when he was working | min Canada. He flew home to take care of his wife. He helped to console and treat his wife as she had to endure constant pain. He watched his wife go from an active, well-respected and successful educator to a depressed, inactive, emotionally drained women, who, for over two years, endured for the most part constant pain. He watched as the stress and pain from the accident caused her to become so depressed that he legitimately feared that she would commit suicide. Their personal life together deteriorated, i.e., their sex life was limited, and even today it is still affected. J.B. AN-DRUS had to care for her and assist her in household chores unlike before the accident, and he no longer could enjoy her company while fishing or hunting. Consequently, we find that the trial court committed manifest error when it found that J.B. ANDRUS suffered no loss of consortium and reverse.
Having found that the trial court committed manifest error, we now review the damages in this case de novo. Rosell v. ESCO, 549 So.2d 840 (La.1989) (holding when a reversible error of law or manifest error of material fact is made in the lower court, appellate courts are required to redetermine the facts de novo from the entire record and render a judgment on the merits). “In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Rather, we set the award in an amount which is just compensation for the damages revealed by the record.” Thompson v. DOTD, 639 So.2d 864, 871 (La.App. 3d Cir.1994).
In determining the appropriate award for loss of consortium, we consider the following:
“The compensable elements in a loss of consortium claim are loss of society, sex, service, and support. LSA-C.C. Art. 2315(B); Vidrine v. Government Employees Insurance Co., 528 So.2d 765 (La.App. 3rd Cir.1988), writ denied, 532 So.2d 156 (La.1988). Elaborating on these elements of damages, we stated in Girard v. Price, 606 So.2d 990, 995 (La.App. 3rd Cir.1992): ‘Society’ is broader than loss of sexual *282 relations. It includes general love, companionship, and affection that the spouse looses as a result of the injury. ‘Support’ is the loss of family income that would go to support the uninjured spouse. ‘Service’ is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained for another source and at a price.”
Terro v. Casualty Reciprocal Exchange, 631 So.2d 651, 657 (La.App. 3d Cir.), writ denied, 637 So.2d 157 (La.1994).
As already discussed, the facts in this case reveal that ANDRUS’ debilitating injuries had a significant impact on the life of J.B. Andrus and on his relationship with his wife. We find that an award of $25,000.00 for loss of consortium is merited.
| iiIssue IV
Whether the trial court erred when it cast defendant with interest subject to a credit and with court costs.
STATE FARM incurred no real liability at trial because the damages awarded were below $110,000.00, and therefore, it argues that it cannot be cast for interest on the verdict or the court costs.
“As a general rule ‘costs shall be paid by the party cast’. La.C.C.P, Art. 1920. The trial court’s assessment of costs can be reversed on appeal, only upon a showing of an abuse of discretion. State ex rel. Guste v. Nicholls College Foundation, 592 So.2d 419 (La.App. 1st Cir.1991), writ denied, 593 So.2d 651 (1992).”
Parfait v. Hospital Service Dist. No. 1, 638 So.2d 1140, 1144 (La.App. 1st Cir.1994). We find no abuse in the trial court’s ruling concerning court costs nor do we find an abuse in the ruling concerning interest particularly in view of our amendments to awards of damages.
The trial in the matter before us lasted from July 13th through the 16th, 1993. On the second day of the trial, a settlement (and dismissal) was entered into between the ANDRUS’ and Horace Mann Insurance Agency, a defendant in the case. Part of that settlement provided that Horace Mann would pay all court costs through July 13, 1993. Hence, the only costs left in the ease were those incurred on the last three days of the trial, and thereafter.
Accordingly, for the reasons stated above, the judgment is amended to cast STATE FARM with the court costs in accordance with the stipulations accepted by the trial court in the settlement agreement offered by Horace Mann Insurance.

Conclusion

For the foregoing reasons, the judgment of the trial court concerning general damages is amended as follows, $125,000.00 for past and future physical pain and suffering and $75,-000.00 for past and future mental pain. The award of damages concerning J.B. Andrus’ loss of consortium is reversed and judgment is hereby rendered in his favor in the amount of $25,000.00. The rulings of the trial court concerning Rumae Nell Andrus’s loss of earnings and income is affirmed. The trial court’s allocation of court costs and interest is amended to reflect the stipulations agreed to by the litigants.
li2It is ORDERED, ADJUDGED, and DECREED, that judgment is rendered in favor of plaintiff-appellant, J.B. Andrus, and against State Farm Mutual Automobile Insurance Company, for loss of consortium in the amount of $25,000.00.
AFFIRMED AS AMENDED IN PART; AFFIRMED IN PART: REVERSED IN PART AND RENDERED.
DOUCET, J., dissents and assigns written reasons.

. Temporomandibular joint (TMJ).